## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTWAN L. RICHARDSON, | : | Civil No. 1:22-CV-00029 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BRIAN S. CLARK, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court are Defendants' motions to dismiss the second amended complaint.  (Docs. 38, 39.)  Also pending before the court are Plaintiff's motion for stay, Doc. 57, and motion to compel, Doc. 62.  Plaintiff Antwan Richardson ("Plaintiff") is an inmate currently housed at the State Correctional Institution in Houtzdale, Pennsylvania, ("SCI- Houtzdale") and is self-represented in this 42 U.S.C. § 1983 action.  In late 2019 and early 2020, Plaintiff suffered symptoms that were originally misdiagnosed as anxiety and later revealed to be symptoms of a pulmonary embolism.  While the court recognizes that the misdiagnosis was unfortunate and Plaintiff was, in fact, suffering from a life-threatening condition, no actions on the part of the Defendants rise to the level of a constitutional violation.  As such, Defendants' motions to dismiss will be granted.  Plaintiff's motions for stay and to compel will be denied.

1

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this action in January of 2022.  (Doc. 1.)  The initial complaint named thirteen defendants: (1) Brian Clark ("Clark"), Warden; (2) William Young ("Young"), Medical Director; (3) Doug Macut ("Macut"), Medical Director; (4) Kayla Zeiders-Heichel ("Zeiders-Heichel"), nurse; (5) Addonna Thomas ("Thomas"), nurse; (6) Tia Drabich ("Drabich"), nurse; (7) Michael Pries ("Pries"), Commissioner; (8) PrimeCare Medical, Inc. ("PrimeCare"); (9) Mark Neidigh, Correctional Officer Captain; (10) Taylor Glenn ("Glenn"), Correctional Officer; (11) John Doe 1, Correctional Officer; (12) John Doe 2, Correctional Officer; and (13) Dauphin County, Pennsylvania, supervisor.  (Doc. 1.)  In February of 2022, Plaintiff filed an amended complaint, which corrected the names of the John Doe defendants to Darrell Horcher ("Horcher") and Andrew Burkins ("Burkins") and changed the name of Defendant Mark Neidigh to Captain Ted Zimmerman ("Zimmerman").  (Doc. 19.)

Twelve of the named defendants filed motions to dismiss the amended complaint.  (Docs. 25, 27).  In response, Plaintiff filed a second amended complaint on May 13, 2022, naming the same thirteen defendants and adding Dauphin County Prison.  (Doc. 36.)  The pending motions to dismiss the amended complaint were denied as moot, and the same twelve defendants filed subsequent

motions to dismiss the second amended complaint.  (Docs. 37, 38, 39.)  The

motions to dismiss the second amended complaint are currently before the court.

The twelve active defendants are divided into two groups: (1) the "Medical

Defendants" including PrimeCare Medical, Inc., Young, Macut, Zeiders-Heichel,

Thomas, and Drabich; and (2) the "Dauphin County Defendants" including

Dauphin County Prison, Clark, Pries, Zimmerman, Glenn and Burkins.  (Docs. 38,

39.)  The waiver of service sent to Defendant Horcher was returned as unable to

forward, and he has not appeared in this action.[1]  (Doc. 35.)

Plaintiff filed a brief in opposition to the motion to dismiss filed by the

Dauphin County Defendants.  (Doc. 55.)  The Dauphin County Defendants filed a

reply, Doc. 56, which were followed by sur-replies from both Plaintiff and

Dauphin County Defendants, Docs. 59, 61.  In response to the Medical

Defendants' motion to dismiss, Plaintiff filed a motion to stay .  (Doc. 57.)

Plaintiff has also filed a motion to compel, which is pending before this court.

(Doc. 62.)

---

[1] In this memorandum, the court finds that Plaintiff failed to properly raise any Eighth
Amendment, Fourteenth Amendment, negligence, or intentional infliction of emotional distress
claims against the twelve Defendants who have appeared in this action.  Therefore, even though
Defendant Horcher has not appeared in this action, the court will also dismiss the claims raised
against him.  *See* 28 U.S.C. §1915(e)(2)(B)(ii) ("the court shall dismiss the case at any time if the
court determines that . . . the action or appeal . . . fails to state a claim on which relief may be
granted.").

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States. Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at Dauphin County Prison, which is located within this district. *See* 28 U.S.C. § 118(b).

## MOTION TO DISMISS STANDARD

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines

whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d. Cir. 2020).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015), as amended (Mar. 24, 2015). Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not

seek leave to amend, unless such an amendment would be inequitable or futile.

*See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir.

2014); *see also Phillips*, 515 F.3d at 245.  A complaint that sets forth facts which

affirmatively demonstrate that the plaintiff has no right to recover is properly

dismissed without leave to amend.  *Grayson v. Mayview State Hosp.*, 293 F.3d

103, 106 (3d Cir. 2002).

**DISCUSSION**

**A. Facts Alleged in the Second Amended Complaint.**

In the second amended complaint, Plaintiff alleges that on December 3,

2019, he filled out a medical request form stating he was having pains in both of

his sides and difficulty breathing.  (Doc. 36, p. 3.)[2]  He alleges that on December 4,

2019, he informed non-defendant nurse Katelin Wright that he was having severe

pains in both his sides making it difficult to breath.  (*Id.*)  Nurse Wright stated that

she would put him in to see the doctor.  (*Id.*)  On December 5, 2019, Plaintiff was

seen and examined by Defendant Young, who stated that he did not know where

Plaintiff's pain and difficulty breathing were coming from, and he should try to lie

down and relax.  (*Id.*)  Plaintiff alleges that he continued to complain to staff and

nurses that his pains and difficulty breathing were getting worse day after day.

(*Id.*, p. 4.)

---

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

On December 11, 2019, he was examined by Defendant Macut, who told him that he did not know where his pains and difficulty breathing were coming from and to just lie down and relax. (*Id*.)

On December 15, 2019, Plaintiff told Defendants Glenn and Thomas that he had a medical emergency and was having trouble breathing. (*Id*.) Defendant Glenn threw a medical request slip at Plaintiff through the gate and told Plaintiff to go to his "fucking cell." (*Id*.) Defendant Thomas stated he was doing a pill call and could not help Plaintiff. (*Id*.) Plaintiff alleges that he was taken to confinement for his medical complaint and neither Defendants Glenn nor Thomas provided Plaintiff any medical assistance for his complaint. (*Id*.) Plaintiff alleges that he filled out a medical request stating he was still having pains and difficulty breathing and his symptoms were getting worse. (*Id*., p. 5.)

Plaintiff alleges that on December 18, 2019, Defendant Zeiders-Heichler examined Plaintiff and stated she did not know where the pains and difficulty breathing were coming from, and he should just lie down and try to relax. (*Id*.)

Plaintiff alleges that on December 20, 2019 he was seen by Defendant Young, who again stated he did not know the cause of the pains and difficulty breathing. (*Id*.) He alleges that Defendant Young told him to just try to lie down and relax and prescribed him more pain medication. (*Id*.)

Plaintiff alleges that on December 25, 2019, he wrote a medical request stating that his left leg was completely swollen, and he was given muscle rub and more medication. (*Id.*, p. 6.)

He further alleges that on December 28, 2019, he filled out a medical request form stating he was coughing up blood and having chest pains. (*Id.*) He spoke with Defendant Zeiders-Heichler and told her that he was coughing up blood and could not sleep all night because "every time his eyes closed his body automatically reflected into painful spasms and he felt like he was about to choke and die." (*Id.*) She told him that she could not notify the doctor and told him to lie down and relax. (*Id.*)

Plaintiff alleges that on January 1, 2020, he filled out a medical request form stating that he was still coughing up blood and having chest pains. (*Id.*)

Plaintiff alleges that on January 6, 2020, he filled out a medical request form stating his chest pain and difficulty breathing were getting worse and that he was getting light-headed while standing. (*Id.*)

Plaintiff alleges that on January 8, 2020, he filled out a medical request form stating that his chest pains and difficulty breathing were getting worse, and he was still getting light-headed and seeing black spots when standing. (*Id.*, p. 7.)

He alleges that his medical request forms filed on December 18, 2019, January, 1, 2020, January 6, 2020, and January 8, 2020 received no response. (*Id.*)

Plaintiff alleges that on January 10, 2020, at around 8:00 a.m. he started to feel sharper squeezing pains in his chest and fainted while attempting to walk to the cell door.  (*Id*.)  He alleges that his cellmate then got  non-defendant C.O. Myer and Defendant Zeiders-Heichler, and he told Defendant Zeiders-Heichler about his symptoms.  (*Id*.)  Defendant Zeiders-Heichler told him that he was probably having anxiety.  (*Id*.)  Plaintiff alleges that he told her he did not have anxiety issues.  (*Id*.)  He alleges that Defendant Zeiders-Heichler told him to just lie down and relax.  (*Id*.)

At 9:00 p.m. on January 10, 2020, Plaintiff told non-defendant Nurse Barnett what happened earlier that day, and that he was still having chest pains.  (*Id*.)  Plaintiff alleges that Nurse Barnett took him to get an EKG, which showed he was in "severe cardiac arrest."  (*Id*.)  Defendant Drabich called the provider who told her to send Plaintiff to the hospital.  (*Id*., pp. 7–8.)  Defendant Drabich called Defendant Zimmerman and told him that she needed to send Plaintiff to the hospital.  (*Id*., p. 8.)  Plaintiff alleges that Defendant Zimmerman told Defendant Drabich to wait twenty minutes until after the shift changed before she called the ambulance.  (*Id*.)  He alleges that Defendant Drabich hung up the phone and complained to the other nurses about having to wait twenty minutes before calling an ambulance where Plaintiff was clearly in severe distress.  (*Id*.)  Plaintiff alleges

that after twenty minutes, Defendant Zimmerman called back and told her to call the ambulance. (*Id*.)

Once at the hospital, Plaintiff was given a CAT scan and told he was going through cardiac arrest due to several large blood clots that formed in both lungs, a massive saddle pulmonary embolism with core pulmonary in acute respiratory failure with hypoxia. (*Id*.) Plaintiff further alleges that when hospital staff were planning to move Plaintiff into the intensive care unit ("ICU"), the nurse was stopped by two correctional officers, non-defendant CO Darry Orcher and Defendant Burkins, who told her that she would have to wait twenty minutes after their supervisors changed shifts because they just called them and told them what room they are in and did not want to call back and tell them a different room number until after shift change. (*Id*., p. 9.) Plaintiff alleges that this resulted in a "heated argument." (*Id*.)

Plaintiff alleges that several doctors told him that the pulmonary embolism saddle is something that formed over a long period of time and became life threatening, and that since it became so large that he would need lifetime medical treatment. (*Id*.) He alleges that if he had been treated earlier, he would not need lifetime medical treatment. (*Id*.)

Plaintiff alleges that he wrote a grievance to Defendant Clark concerning the "this issue," following the December 15, 2019 encounter with Defendants Glenn

and Thomas, and then appealed the denial of his grievance.  (*Id*., p. 4.)  Both

Defendant Clark and Pries "refused to intervene and correct his staff['s] deliberate

indifference to Plaintiff's medical needs."  (*Id*., pp. 4–5.)  He alleges that

Defendants Clark and Pries claimed that his allegations could not be verified.  (*Id*.,

p. 5.)  Plaintiff asserts that it could all be verified by the cameras in the front of E

block control booth and named witnesses.  (*Id*.)

Plaintiff alleges that on January 26, 2020 he filed a grievance concerning the

medical neglect, and it went unanswered.  (*Id*., p. 10.)

Plaintiff alleges that all Defendants refused to provide him with medical

care, were deliberately indifferent, and were negligent, causing Plaintiff to go

through unnecessary prolonged pain and emotional distress and resulting in a

lifetime of medical treatment.  (*Id*., p. 9.)

Plaintiff's complaint states that it raises eight claims, but some are

duplicative.  (Docs. 36, pp. 10–13.)  Essentially, he raises an Eighth Amendment

deliberate indifference claim for failing to provide treatment for his medical

condition, a Fourteenth Amendment due process claim for denying his grievances,

a negligence claim, and an intentional infliction of emotional distress claim.  (*Id*.)

## B. Plaintiff's Motion to Stay Will Be Denied.

On May 31, 2022, Medical Defendants filed their notice of intent to file a

motion to dismiss all claims of professional negligence for failure to file a

certificate of merit pursuant to PA.R.C.P. 1042.3.  (Doc. 42.)  They then proceeded to file their brief in support of their motion to dismiss including the argument that Plaintiff's medical negligence claims should be dismissed for failing to seek the proper certificate of merit under Pennsylvania law.  (Doc. 44, p. 29–31.)

In response, on August 5, 2022[3], Plaintiff filed a motion for stay stating that he had submitted a request for appointment to the Medical Justice Alliance for a cardiac doctor to read and evaluate his case and he would need time to gather the Certificate of Merit.  (Doc. 57.)  However, under Pennsylvania law, Plaintiff was required to have the Certificate of Merit within sixty days of filing the complaint.  Pa.R.C.P. 1042.3.  Here, Plaintiff's motion for stay is well outside sixty days from filing the second amended complaint on May 13, 2022.  It is also outside thirteen days from the notice by Medical Defendants of their intention to seek dismissal based on the lack of the Certificate of Merit as allotted by Pa.R.C.P. 1042.3(d) to seek an extension of time.  Therefore, the court finds that Plaintiff's motion for stay is untimely, and it will be denied.  The court will consider the lack of the Certificate of Merit when addressing the medical negligence claim raised in the second amended complaint.

---

[3] This is the date the document was received and filed by the court.  Plaintiff did not date the document, and the post-mark date on the envelope is August 3, 2022.  (Doc. 57.)

### C. All Claims Against Dauphin County Prison, Dauphin County, and PrimeCare Will Be Dismissed.

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  It is well-settled that neither a state nor its agencies, are considered a "person" as that term is defined under § 1983 and, therefore, are not subject to a § 1983 suit.  *Hafer v. Melo*, 502 U.S. 21, 25–27 (1991).  Similarly, neither a prison nor a department within a prison is a person subject to suit under § 1983.  *Fischer v. Cahill*, 474, F.2d 991, 992 (3d Cir. 1973).  The Dauphin County Prison is not a person within the meaning of 42 U.S.C. § 1983.  Thus, it is entitled to dismissal with prejudice.

It is also well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."  *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (citations and quotations omitted).  The Supreme Court has held that, while municipal bodies may not be sued solely for violations perpetrated by its employees or agents, "it is when execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978).  Here, Plaintiff has failed to allege that any policy or custom caused his injury.  (Doc. 36.)  Therefore, all claims against Dauphin County will be dismissed without prejudice.

Likewise, a private corporation contracted by a prison to provide health care for inmates cannot be held liable on a *respondeat superior* theory; rather, it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs.  *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003). Accordingly, to state a viable § 1983 claim against PrimeCare, the complaint must set forth "facts to state a claim that [it] had a policy, custom, or practice, and that the policy, custom, or practice caused the constitutional violation at issue." *See Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale*, 318 F.3d at 583).  The policy, custom, or practice of PrimeCare was not addressed anywhere in the complaint.  Therefore, the company lacks personal involvement and there are no allegations consistent with the requirements in *Natale*.  As such, all claims against PrimeCare will be dismissed without prejudice.

Here, the court notes that there appears to be some confusion on the service and appearance of Defendants Dauphin County Prison and Dauphin County. Plaintiff has listed "Dauphin County, Supervisor" and Dauphin County Prison, as Defendants in this action.  (Doc. 36.)  Defense counsel for the Dauphin County Defendants states he represents Dauphin County Prison in the motion to dismiss. (Doc. 39.)  However, only "Dauphin County, Supervisor" was served a waiver of service form in this action, and the waiver was not returned.  (Doc. 7, pp. 21–22.) Additionally, in the initial notice of appearance defense counsel lists Dauphin County as a client, not Dauphin County Prison.  (Doc. 23.)  Regardless of the confusion between the two entities being properly served or properly appearing in this action, the court finds it appropriate to dismiss the claims raised against both as Plaintiff has failed to state a claim for which relief can be granted.  In the event that either Dauphin County or Dauphin County Prison has not been properly served or failed to appear in this action, the court has authority to dismiss such claims under 28 U.S.C. §1915(e)(2)(B)(ii):  "the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted."

### D. The Eighth Amendment Claim Will Be Dismissed.

Plaintiff raises an Eighth Amendment claim against the remaining Defendants for deliberate indifference.  (Doc. 36.)  Prison officials violate the

Eighth Amendment when they act with deliberate indifference to a prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). To sustain a constitutional claim under the Eighth Amendment for inadequate medical treatment, a plaintiff must make (1) an objective showing that his medical needs were serious, and (2) a subjective showing that the defendants were deliberately indifferent to those medical needs. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987) (citation omitted). A prison official is deliberately indifferent when he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

However, "[p]rison medical authorities are given considerable latitude in the diagnosis and treatment of medical problems of inmates and courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment.'" *Byrd v. Shannon*, No. 1:09-CV-1551, 2010 WL 5889519, at *4 (M.D. Pa. Nov. 24, 2010) (quoting *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir.1979)). Mere disagreement over proper treatment does not state a claim upon which relief can be granted. *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990);

*Monmouth Cty. Corr. Inst'l Inmates,* 834 F.2d at 346 ("Courts, determining what constitutes deliberate indifference, have consistently held that mere allegations of malpractice do not raise issues of constitutional import. . . Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation.").

Here, Plaintiff has failed to meet the second prong of a deliberate indifference claim regarding Defendants' actions prior to January 10, 2020. In order to establish the second prong, Plaintiff must allege that the prison official knew of and disregarded "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. In his second amended complaint, Plaintiff repeatedly states that Medical Defendants did not know the cause of his symptoms. (Doc. 36, pp. 3–5.) Therefore, he has failed to establish that any of the Defendants knew that he was suffering from a serious medical need prior to January 10, 2020. In fact, the alleged facts support the conclusion that Defendants believed he was suffering from anxiety by repeatedly telling him the lie down and relax. (*Id.*)

According to the alleged facts, starting on January 10, 2010 there was subjective knowledge on the part of Defendants regarding a serious medical need as his EKG showed he was in cardiac arrest. (Doc. 36, p. 7.) However, the facts alleged fail to demonstrate any deliberate indifference on the part of any

Defendants after the EKG results were obtained.  When Plaintiff sought care, it was provided.  (Doc. 36, pp. 7–9.)

The court understands Plaintiffs' exasperation at the actions of Dauphin County Defendants in delaying the call for the ambulance and delaying his transfer to the ICU.  But his complaint fails to allege that these short delays themselves resulted in any additional or different injury.  Instead, he alleges it was the pulmonary embolism going undiagnosed for a "long period of time" that resulted in the need for lifetime treatment.  (Doc. 36, p. 9.)  Additionally, short delays in treatment generally do not rise to the level of deliberate indifference.  *See Rodriguez v. Thomas*, No. 1:CV-12-2090, 2015 WL 1470719, at *9 (M.D.Pa. Mar. 31, 2015) ("short delays unaccompanied by arbitrary or unduly burdensome bureaucratic procedures" do not rise to the level of deliberate indifference).  The court finds that ensuring that appropriate staff is present at the jail and at the hospital is not "arbitrary" or "unduly burdensome" in a correctional institution context.  Therefore, Plaintiff's Eighth Amendment claims of deliberate indifference will be dismissed against all Defendants without prejudice.

## E. The Fourteenth Amendment Due Process Claim Will Be Dismissed.

Plaintiff raises Fourteenth Amendment due process claims based on the handling of his grievances from December of 2019 through January of 2020. (Doc. 36.)  Plaintiff fails to allege that any of the Medical Defendants were

involved in the grievance process at the prison.  (Doc. 36.)  Therefore, he has failed to allege the personal involvement necessary for a § 1983 claim against them.  As such, all Fourteenth Amendment claims against the remaining Medical Defendants shall be dismissed without prejudice.

As to the Dauphin County Defendants, the due process claims will also be dismissed.  The Fourteenth Amendment provides, in pertinent part, that no State shall "deprive any person of life, liberty, or property, without due process of law[.]"  *See* U.S. Const. amend. XIV.  With respect to a procedural due process claim, the court observes that there is no constitutional right requiring prison officials to investigate an inmate's grievances.  In order to state a Fourteenth Amendment due process claim, a plaintiff must allege that a liberty interest is at stake:

> Procedural due process rights are [only] triggered by deprivation of a legally cognizable liberty interest. For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life*." Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.E.2d 418 (1995). In determining whether a protected liberty interest exists, the court must consider: (1) the duration of the disciplinary confinement; and (2) whether the conditions of confinement were significantly more restrictive than those imposed upon other inmates in solitary confinement. *See id*. at 468, 115 S.Ct. 2293; *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000).

*Huertas v. Sec'y of Pa. Dep't of Corr*., 533 F. App'x 64, 66 (3d Cir. 2013).  The failure to investigate or respond to a grievance does not rise to the level of a liberty

interest.  *Massaquoi v. McConaughey*, No. 3:17-CV-938, 2020 WL 1908495, at

*17 (M.D. Pa. Jan. 24, 2020) (*citing Mann v. Adams*, 855 F.D. 639, 640 (9th Cir.

1995)).  Accordingly, because Plaintiff has not identified a cognizable liberty

interest, the court concludes that his Fourteenth Amendment procedural due

process claims fail as a matter of law.  As such, these claims will be dismissed with

prejudice.

### F.  The Negligence Claims Will Be Dismissed.

Plaintiff alleges negligence on the part of both Medical Defendants and

Dauphin County Defendants.  (Doc. 36.)

### 1.  Medical Defendants

In Pennsylvania, medical negligence, or medical malpractice, is defined as

"the unwarranted departure from generally accepted standards of medical practice

resulting in injury to a patient, including all liability-producing conduct arising

from the rendition of professional medical services." *Toogood v. Owen J. Rogal*,

*D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003) (citing *Hodgson v. Bigelow*, 7 A.2d

338 (Pa. 1939)).  To establish a cause of action for negligence under Pennsylvania

law, a plaintiff must prove the following elements: (1) a duty or obligation

recognized by law; (2) a breach of that duty; (3) a causal connection between the

conduct and the resulting injury; and (4) actual damages.  *See Northwestern Mut.*

*Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005) (citing *In re TMI*, 67

F.3d 1103, 1117 (3d Cir. 1995)).

Pennsylvania Rule of Civil Procedure 1042.3 requires a plaintiff alleging

professional negligence to file a certificate of merit within 60 days of filing the

complaint.  Pa. R. Civ. P. 1042.3.  The certificate must include one of the

following: a written attestation by "an appropriate licensed professional" that there

is a "reasonable probability that the care, skill or knowledge exercised or

exhibited" by the defendant "fell outside acceptable professional standards," and

that this was the cause of the plaintiff's injuries; a statement that the claim against

the defendant is based only on the professional negligence of those for whom the

defendant is responsible; or a statement that expert testimony is unnecessary for

the plaintiff's claim to proceed.  Pa. R. Civ. P. 1042.3(a)(1)-(3).  Failure to file a

certificate of merit is fatal to a plaintiff's claim.  Pa. R. Civ. P. 1042.7.

The requirements of Rule 1042.3 are substantive in nature and, therefore,

federal courts in Pennsylvania must apply these prerequisites of Pennsylvania law

when assessing the merits of a medical malpractice claim.  *See Liggon-Redding v.*

*Estate of Sugarman*, 659 F.3d 258, 262-65 (3d Cir. 2011); *Iwanejko v. Cohen &*

*Grigsby*, P.C., 249 F. App'x 938, 944 (3d Cir. 2007).  This requirement applies

with equal force to counseled complaints and to *pro se* medical malpractice actions

brought under state law.  *See Hodge v. Dep't of Justice*, 372 F. App'x 264, 267 (3d

Cir. 2010) (affirming district court's dismissal of medical negligence claim for failure to file a certificate of merit).

The Pennsylvania Supreme Court has noted that "[b]ecause the negligence of a physician encompasses matters not within the ordinary knowledge and experience of laypersons[,] a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury." *Toogood*, 824 A.2d at 1145.  A very narrow exception applies "where the matter is so simple or the lack of skill or care is so obvious as to be within the range of experience and comprehension of even non-professional persons." *Hightower-Warren v. Silk*, 698 A.2d 52, 54 n.1 (Pa. 1997).

Here, Plaintiff has failed to file the required certificate of merit within the 60-day time period provided by rule.  Therefore, this claim will be dismissed without prejudice.  *See Stoud v. Abington Mem. Hosp*., 546 Supp. 2d 238, 250 (E.D. Pa. 2008) ("[T]he proper procedure in federal practice is to file with the court a motion pursuant to Fed. R. Civ. P. 12(b) to dismiss the professional negligence claim without prejudice" based on this missing certificate of merit.).

### 2.  Dauphin County Defendants

As set forth above, to establish a general cause of action for negligence under Pennsylvania law, a plaintiff must prove the following elements: (1) a duty

or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages. *See Northwestern Mut. Life Ins. Co.*, 430 F.3d at 139. Here, Plaintiff has alleged no causal connection between the conduct of Dauphin County Defendants and Plaintiff's injuries. When Plaintiff requested a sick/medical request form from Dauphin County Defendants, it was provided. (Doc. 36, p. 4.) While Plaintiff is offended by the manner in which it was provided, the fact remains that it was provided. When Dauphin County Defendants were made aware of Plaintiff's serious medical need, he was provided treatment. (*Id.*, p. 7–9.) While there was a short delay in calling an ambulance and transferring Plaintiff to the ICU, there is no allegation that these short delays caused Plaintiff's injuries. Therefore, the negligence claims against Dauphin County Defendants will be dismissed without prejudice.

### G. The Intentional Infliction of Emotional Distress Claim Will Be Dismissed.

A claim for intentional infliction of emotional distress under Pennsylvania law requires four elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Bruffett v. Warner Commc'ns, Inc.*, 692 F.2d 910, 914 (3d Cir. 1982). Here, Plaintiff's alleged facts demonstrate that he was misdiagnosed with anxiety while actually suffering from a pulmonary embolism.

(Doc. 36.)  This does not rise to the level of extreme or outrageous conduct.  While Plaintiff alleges he was not always treated with a sympathetic tone when seeking treatment, no conduct he alleges rises to the level of extreme or outrageous.  Therefore, the intention infliction of emotional distress claim will be dismissed without prejudice.

### H. Plaintiff's Motion to Compel Will Be Denied.

Plaintiff filed a motion to compel in September of 2022 seeking the production of medical evidence in order to submit the evidence to a medical expert to obtain a certificate of merit.  (Doc. 62.)  As discussed above, Plaintiff's attempts to obtain a certificate of merit were commenced too late.  Therefore, this motion will be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to stay will be denied as untimely.  Defendants' motions to dismiss will be granted.  Plaintiff's Eighth Amendment claims, negligence claims, and intentional infliction of emotional distress claims will be dismissed without prejudice.  Plaintiff's Fourteenth Amendment claims against the Medical Defendants will be dismissed without prejudice.  His Fourteen Amendment claims against the Dauphin County Defendants will be dismissed with prejudice.  Plaintiff's motion to compel will be denied.

Before dismissing a civil rights complaint, a district court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245.  Plaintiff will be granted leave to file an amended complaint, but he must clearly label the document as his third amended complaint and use the docket number assigned to this case.  Should Plaintiff fail to timely file an amended complaint within thirty days, the case will be closed.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated:  February 28, 2022