**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTWAN L. RICHARDSON, | : | Civil No. 1:22-CV-00029 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BRIAN S. CLARK, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court are Defendants' motions to dismiss Antwan L.

Richardson's ("Plaintiff") third amended complaint.  (Docs. 73, 77.)  Also pending

before the court are Plaintiff's motion for sanctions, Doc. 68, motion to appoint

forensic handwriting and computer analysis expert, Doc. 101, and motion to

appoint medical expert and/or counsel, Doc. 103.  Plaintiff is an inmate currently

housed at the State Correctional Institution in Houtzdale, Pennsylvania, ("SCI-

Houtzdale") and is self-represented in this 42 U.S.C. § 1983 action.  In late 2019

and early 2020, Plaintiff suffered severe health symptoms that were later revealed

to be from a pulmonary embolism.  In the second amended complaint, Plaintiff

alleged that he was misdiagnosed as having anxiety and the court found that

although the misdiagnosis was unfortunate, it was not a constitutional violation.

(Doc. 64.)  Now, Plaintiff's third amended complaint does not allege a

misdiagnosis, but instead a refusal to treat his symptoms.  Based on the allegations

1

in the third amended complaint, some of Plaintiff's claims will survive the Rule 12(b)(6) challenges.  As such, Defendants' motions to dismiss will be granted in part and denied in part.  Plaintiff's pending motions will be denied.  Additionally, the Medical Defendants included an alternative motion for summary judgment with their motion to dismiss, Doc. 73, which the court will not consider at this procedural posture of the case.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this action in January of 2022.  (Doc. 1.)  The initial complaint named thirteen defendants: (1) Brian Clark ("Clark"), Warden; (2) William Young ("Young"), Medical Director; (3) Doug Macut ("Macut"), Medical Director; (4) Kayla Zeiders-Heichel ("Zeiders-Heichel"), nurse; (5) Addonna Thomas ("Thomas"), nurse; (6) Tia Drabich ("Drabich"), nurse; (7) Michael Pries ("Pries"), Commissioner; (8) PrimeCare Medical, Inc. ("PrimeCare"); (9) Mark Neidigh, Correctional Officer Captain; (10) Taylor Glenn ("Glenn"), Correctional Officer; (11) John Doe 1, Correctional Officer; (12) John Doe 2, Correctional Officer; and (13) Dauphin County, Pennsylvania, supervisor.  (Doc. 1.)  In February of 2022, Plaintiff filed an amended complaint, which corrected the names of the John Doe defendants to Darrell Horcher ("Horcher") and Andrew Burkins ("Burkins") and changed the name of Defendant Mark Neidigh to Captain Ted Zimmerman ("Zimmerman").  (Doc. 19.)

Twelve of the named defendants filed motions to dismiss the amended complaint.  (Docs. 25, 27).  In response, Plaintiff filed a second amended complaint on May 13, 2022, naming the same thirteen defendants and adding Dauphin County Prison as a defendant.  (Doc. 36.)  The pending motions to dismiss the amended complaint were denied as moot, and the same twelve defendants filed subsequent motions to dismiss the second amended complaint.  (Docs. 37, 38, 39.)  On February 28, 2023, this court granted Defendants' motions to dismiss the second amended complaint and granted Plaintiff an opportunity to file a third amended complaint.  (Docs. 64, 65.)

On March 8, 2023, the court received and docketed Plaintiff's third amended complaint.  (Doc. 67.)  This third amended complaint names the same thirteen Defendants identified in the second amended complaint and does not name Dauphin County Prison.  (*Id*., pp. 3–6.)[1]

Defendants have filed motions to dismiss the third amended complaint.  (Docs. 73, 77.)[2]  The twelve active defendants are divided into two groups: (1) the

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

[2] The Medical Defendants' motion to dismiss includes an alternative motion for summary judgment.  (Doc. 73.)  The Third Circuit held in *Renchenski v. Williams* that, before converting a motion to dismiss to a motion for summary judgment in a case brought by a *pro se* prisoner, a court must provide the prisoner "with a paper copy of the conversion Order, as well as a copy of Rule 56," and a short summary explaining its importance that highlights the utility of a Rule 56(d) affidavit if the plaintiff needs to forestall resolution of the motion to obtain additional discovery.  622 F.3d 315, 340 (3d. Cir. 2010).  The court did not provide such notice in this

"Medical Defendants" including PrimeCare Medical, Inc., Young, Macut, Zeiders-Heichel, Thomas, and Drabich; and (2) the "Dauphin County Defendants" including Dauphin County, Clark, Pries, Zimmerman, Glenn, and Burkins.  (Docs. 73, 77.)  The waiver of service sent to Defendant Horcher was returned as unable to forward.  (Doc. 35.)  However, Attorneys Murray J. Weed and Frank J Lavery, Jr. have been filing motions on his behalf.  (Docs. 56, 61, 117.)[3]  Despite these filings, it does not appear that Defendant Horcher has made any motion to dismiss the claims raised against him in the third amended complaint.  (Docs. 77, 78.)  Despite the lack of motion, the court can consider the claims raised against him under 28 U.S.C. 1915(e)(2)(B)(ii).

Plaintiff filed a brief in opposition to both groups of Defendants' motions to dismiss.  (Doc. 99.)  Dauphin County Defendants filed a reply.  (Doc. 100.)  Plaintiff has also filed a motion to appoint a forensic handwriting and computer analysis expert and two motions to appointment a medical expert and/or counsel.  (Docs. 101, 103, 113.)

The court will now address the pending motions as well as the claims raised against Defendant Horcher.

_____

action.  Therefore, the court will not consider the motion for summary judgment or the evidence presented in support of it.

[3] Following resolution of the motions to dismiss, Defense Attorneys Lavery and Weed shall file a status report clarifying whether or not either they represent Defendant Horcher.

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. §
1331, which allows a district court to exercise subject matter jurisdiction in civil
cases arising under the Constitution, laws, or treaties of the United States.  Venue
is proper in this district because the alleged acts and omissions giving rise to the
claims occurred at Dauphin County Prison, which is located within this district.
*See* 28 U.S.C. § 118(b).

## MOTION TO DISMISS STANDARD

In order "[t]o survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible
on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.
v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the
plaintiff pleads factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged."  *Id*. (quoting
*Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to
survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir.
2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint
survives a motion to dismiss, a court identifies "the elements a plaintiff must plead
to state a claim for relief," disregards the allegations "that are no more than
conclusions and thus not entitled to the assumption of truth," and determines

5

whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d. Cir. 2020).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015), as amended (Mar. 24, 2015).  Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not

seek leave to amend, unless such an amendment would be inequitable or futile.

*See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir.

2014); *see also Phillips*, 515 F.3d at 245.  A complaint that sets forth facts which

affirmatively demonstrate that the plaintiff has no right to recover is properly

dismissed without leave to amend.  *Grayson v. Mayview State Hosp.*, 293 F.3d

103, 106 (3d Cir. 2002).

## DISCUSSION

### A. Facts Alleged in the Third Amended Complaint

In the third amended complaint, Plaintiff alleges that he was housed in the

Dauphin County Prison as a pretrial detainee.  (Doc. 67, pp. 3, 7.)  He alleges that

on December 3, 2019, he filled out a medical request form stating he was having

pains in both of his sides and difficulty breathing.  (*Id*., p. 8.)  He alleges that on

December 4, 2019, he informed non-defendant nurse Katelin Wright that he was

having severe pains in both his sides making it difficult to breathe.  (*Id*.)  Nurse

Wright stated that she would put him in to see the doctor.  (*Id*.)  On December 5,

2019, Plaintiff was seen and examined by Defendant Young, who stated that he

could not figure out why Plaintiff had pain and difficulty breathing, and that he

should try to lie down and rest.[4]  (*Id*.)  It also appears that Plaintiff was prescribed

_____

[4] The court notes that Plaintiff's second amended complaint alleged that medical providers
diagnosed Plaintiff as suffering from anxiety, and this misdiagnosis was the reason he was
instructed to lie down and rest.  (Doc. 36.)  Plaintiff has omitted any reference to an anxiety
diagnosis in the third amended complaint.  (Doc. 67.)

pain medication at this time because he later alleges that the pain medications were not sufficient.  (*Id*.)  Plaintiff alleges that his condition became worse, the pain increased each day, he could not sleep at night, and he began to cough up blood. (*Id*.)  Plaintiff alleges that he continued to complain to staff and nurses, including Defendant Zeiders-Heichel, and that his symptoms worsened from December 6, 2019 to December 12, 2019.  (*Id*.)

On December 12, 2019, he was examined by Defendant Macut, who told him to lie down and rest and that he could not understand why Plaintiff was experiencing these symptoms.  (*Id*.)  Plaintiff alleges that he requested to go to the hospital, which Defendant Macut refused, stating that "[y]ou have to be on your death bed for Prime Care to send you."  (*Id*., pp. 8–9.)

On December 15, 2019, Plaintiff told Defendant Thomas in the "pill-line" that he was having severe difficulty breathing, was feeling dizzy, had severe chest pains, had extreme pain in both his sides, and was coughing up more blood.  (*Id*., p. 9.)  Plaintiff alleges that Defendant Thomas stated that "she was not going to stop pill line, to attend to him," and turned her back on Plaintiff while continuing to pass out medications, "[c]ompletely refusing to provide Plaintiff with any kind of medical treatment."  (*Id*.)  Plaintiff alleges that he then limped to the control booth and informed Defendant Glenn that he was having a medical emergency with severe difficulty breathing, feeling extremely dizzy, chest pains, pain in both

of his sides, and coughing up more blood.  (*Id*.)  Plaintiff alleges that Defendant Glenn became upset, and stated "I don't have time for this shit, go to your fucking cell or go the fucking hole."  (*Id*.)  Plaintiff alleges that Defendant Glenn then took him to confinement without providing any type of medical treatment.[5]  (*Id*.)  He further alleges that he struggled to breathe that night, was unable to sleep, and was in agonizing pain due to Defendants Glenn and Thomas' refusal to provide medical treatment.  (*Id*.)

Plaintiff alleges that on December 15, 2019, he submitted another medical request form to obtain care.  (*Id*., p. 10.)

Plaintiff alleges that on December 18, 2019, Defendant Zeiders-Heichler examined Plaintiff and stated he should just lie down and try to relax.  (*Id*.)  He also alleges that he requested to go the hospital, and Defendant Zeiders-Heichel denied his request.  (*Id*.)

Plaintiff alleges that on December 20, 2019 he was seen by Defendant Young, and requested to go to the hospital.  (*Id*.)  Plaintiff alleges that Defendant Young gave him the pain medication and the same orders as on December 5, 2019.  (*Id*.)  He requested to go to the hospital, and Defendant Young refused.  (*Id*.)

---

[5] This is contradicted by past pleadings in which Plaintiff alleged that Defendant Glenn provided him a medical request form.  (Doc. 36, p. 4.)

Plaintiff alleges that on December 25, 2019, his left leg was completely swollen, he could not put pressure on it, he could not stand on it, and he had to hop around.  (*Id*.)

He further alleges that on December 28, 2019, he filled out a medical request form stating he was coughing up blood, having chest pains, and difficulty breathing.  (*Id*.)  He spoke with Defendant Zeiders-Heichler, who stated that she could not notify the doctor again, and that he should lie down and try to sleep. (*Id*.)  He also alleges that she stated "they were tired of having to respond to my request."  (*Id*.)

Plaintiff alleges that on January 1, 2020, he filled out a medical request form complaining of the same symptoms and Defendants Zeiders-Heichler and Young and "numerous staff" responded that they were too busy and refused Plaintiff any type of medical treatment.  (*Id*., pp. 10–11.)

Plaintiff alleges that on January 6, 2020 and on January 8, 2020, he submitted medical request forms stating that the symptoms were worse and informed Defendant Zeiders-Heichler and "numerous staff, who all refused Plaintiff any time of medical treatment."  (*Id*., p. 11.)

He alleges that his medical request forms filed on December 18, 2019, December 28, 2019, January, 1, 2020, January 6, 2020, and January 8, 2020 received no response.  (*Id*.)  He alleges that Defendants Zeiders-Heichler, Young,

Macut, Thomas, and Drabich were the medical staff responsible for responding to the medical requests and refused to do so.  (*Id*.)

Plaintiff alleges that on January 10, 2020, at around 7:30 a.m. he started to feel sharper squeezing pains in his chest and fainted while attempting to walk to the cell door.  (*Id*.)  He alleges that his cellmate informed non-defendant C.O. Myer and Defendant Zeiders-Heichler.  (*Id*.)  Defendant Zeiders-Heichler told him that he was probably stressed out.  (*Id*.)  Plaintiff alleges that he told her he could not breathe, could not stand, was having chest pain, and was coughing up blood.  (*Id*.)  He alleges that Defendant Zeiders-Heichler told him to just lie down and relax.  (*Id*.)  He alleges that he told her that he felt like he was dying, and she "left with Plaintiff sitting on the floor against the wall, saying 'it was nothing she could do.'"  (*Id*.)

At 9:00 p.m., Plaintiff told non-defendant Nurse Barnett what happened earlier that day.  (*Id*.)  Plaintiff alleges that Nurse Barnett took him to get an EKG, which showed he was in "severe cardiac arrest."  (*Id*.)  Defendant Drabich[6] called the non-defendant physician Jen Mroz who told her to send Plaintiff to the hospital.  (*Id*., pp. 11–12.)  Defendant Drabich then called Defendant Zimmerman and told him Dr. Morz's orders.  (*Id*., p. 12.)  Plaintiff alleges that Defendant

---

[6] Plaintiff identifies her as Nurse Tia Trabich throughout this section of the third amended complaint.  (Doc. 67, pp. 11–12.)  The court considers this to be a scrivener's error and not the naming of a new party.

Zimmerman told Defendant Drabich to wait thirty minutes before she called the ambulance. (*Id*.) He alleges that Defendant Drabich told Defendant Zimmerman of Plaintiff's "dire condition" and Defendant Zimmerman told her not to call the ambulance until he called back. (*Id*.) Plaintiff alleges that Defendant Drabich complained to staff about being required to wait. (*Id*.) Plaintiff states that after "exactly 37 minutes," Defendant Zimmerman called back and told Defendant Drabich to call the ambulance. (*Id*.)

Plaintiff alleges that upon arriving at the hospital, a CT scan was conducted. (*Id*.) He was allegedly told that he was going through cardiac arrest due to several blood clots in both his lungs, that he had a massive saddle pulmonary embolism, and that he had respiratory failure. (*Id*.) Plaintiff further alleges that when hospital staff were planning to move Plaintiff into the intensive care unit ("ICU"), the nurse was stopped by two correctional officers, Defendants Horcher and Burkins, who told her that she would have to wait twenty minutes after their supervisors changed shifts because they just called them and told them what room they are in and did not want to call back and tell them a different room number until after shift change. (*Id*., p. 12.) The nurse told Defendants Horcher and Burkins that this was not standard procedure and expressed concerns over Plaintiff's rapidly deteriorating conditions, and Defendants Horcher and Burkins refused to allow the transport. (*Id*.)

Plaintiff alleges that several doctors told him that the saddle pulmonary embolism is something that formed over a long period of time and became life threatening, and that since it became so large that he would need lifetime medical treatment. (*Id*., pp. 12–13.)  He alleges that if he had been treated earlier, he would have only required six months of treatment.  (*Id*., p. 13.)

Plaintiff alleges that all Defendants refused to provide him with medical care, were deliberately indifferent, and were negligent, causing Plaintiff to go through unnecessary prolonged pain and emotional distress and a lifetime of medical treatment.  (*Id*., p. 15.)

Plaintiff raises a Fourteenth Amendment deliberate indifference claim for failing to provide treatment for his medical condition, a negligence claim, and an intentional infliction of emotional distress claim.  (*Id*., pp. 15–16.)

## B. All Claims Against Dauphin County Will Be Dismissed With Prejudice

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  It is well-settled that neither a state nor its agencies, are considered a "person" as that term is defined under § 1983 and, therefore, are not subject to a § 1983 suit.  *Hafer v. Melo*, 502 U.S. 21, 25–27

(1991).  It is also well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."  *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (citations and quotations omitted).

The Supreme Court has held that, while municipal bodies may not be sued solely for violations perpetrated by its employees or agents, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978).  Here, Plaintiff has alleged that Dauphin County has "a pattern, custom and policy of delaying or refusing inmates medical treatment until the inmates are extremely ill, or dead, to save money," but he failed to allege any facts in support of this conclusion.  (Doc. 67, p. 13.)  Therefore, all claims against Dauphin County will be dismissed.  Plaintiff was made aware of this pleading requirement in the court's order dismissing the second amended complaint.  (Doc. 64, p. 14.)  However, he did not cure the pleading defect in the third amended complaint.  Therefore, this claim will be dismissed with prejudice.

## C. Deliberate Indifference Claim Against PrimeCare Will Proceed to Discovery

Similar to municipal bodies, a private corporation contracted by a prison to provide health care for inmates cannot be held liable on a *respondeat superior* theory; rather, it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs.  *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003).  Accordingly, to state a viable § 1983 claim against PrimeCare, the complaint must set forth "facts to state a claim that [it] had a policy, custom, or practice, and that the policy, custom, or practice caused the constitutional violation at issue."  *See Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale*, 318 F.3d at 583).

Plaintiff has alleged that PrimeCare has "a pattern, custom and policy of delaying or refusing inmates medical treatment until the inmates are extremely ill, or dead, to save money."  (Doc. 67, p. 13.)  Plaintiff also alleged that Defendant Macut stated that "[y]ou have to be on your death bed for Prime Care to send you" to the hospital.  (*Id.*, p. 9.)  This constitutes a factual allegation in support of a custom or policy within the corporation that supports a claim of deliberate indifference.  Therefore, Plaintiff has pled sufficient facts to survive the motion to dismiss, and the deliberate indifference claim against PrimeCare will survive the pending Fed. R. Civ. P. 12(b)(6) challenge.

### D. All Supervisory Claims Will Be Dismissed With Prejudice

Plaintiff brings claims against Defendants Clark and Pries in their roles as Warden and Commissioner, respectively.  (Doc. 67, pp. 3, 5.)  However, neither of these Defendants are named in the statement of facts.

As discussed above, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."  *Baraka*, 481 F.3d at 210.  Plaintiff's failure to allege any facts demonstrating that Defendants Clark and Pries participated in or approved the alleged constitutional violations results in the claims against them being dismissed under Fed. R. Civ. P. 12(b)(6).  Plaintiff was aware of the personal involvement requirement of defendants under 42 U.S.C. § 1983 as *Baraka* was cited in the court's previous order dismissing the second amended complaint.  (Doc. 64, p. 13.)  Therefore, Plaintiff's current failure to properly plead claims against Defendants Clark and Pries will result in the claims being dismissed with prejudice.  *See Phillips*, 515 F.3d at 245.

To the extent that Plaintiff attempts to attach liability to these defendants based on their supervisory status, this too will fail.  Supervisory liability under § 1983 utilizes the same standard as municipal liability.  *See Carter v. City of Philadelphia,* 181 F.3d 339, 356 (3d Cir. 1999).  A supervisor will only be liable

16

for the acts of a subordinate if he fosters a policy or custom that amounts to deliberate indifference towards an individual's constitutional rights. *See id. at* 357. To establish supervisory liability, a plaintiff must show that (1) a superior officer failed to employ a specific supervisory practice; (2) the existing custom created an unreasonable risk of injury in the absence of the specified supervisory practice; (3) the supervisor was aware that the risk existed; (4) the supervisor was indifferent to the risk; and (5) the underlying violation resulted from the failure to employ the supervisory practice. *Brown v. Muhlenberg Twp.,* 269 F.3d 205, 216 (3d Cir. 2005) (*citing Sample v. Diecks,* 885 F.2d 1099, 1118 (3d Cir. 1989)). Plaintiff has alleged no such facts in his third amended complaint. (Doc. 67.) Therefore, the dismissal of claims against these defendants is appropriate.

### E. The Fourteenth Amendment Claims Will Be Dismissed In Part

Notably, Plaintiff alleges that he was a pretrial detainee during the relevant time period. (Doc. 67, p. 3.) While Plaintiff is raising a deliberate indifference to a serious medical need claim, it will be brought under the Fourteenth Amendment because of his pretrial detainee status.

The Eighth Amendment does not apply until an inmate has been both convicted of and sentenced for his crimes. *See Graham v. Connor,* 490 U.S. 386, 392 n. 6 (1989); *Hubbard v. Taylor,* 399 F.3d 150, 164 (3d Cir. 2005). Thus, an inmate awaiting sentencing must look to either the Fifth Amendment's or the

Fourteenth Amendment's Due Process Clause for protection. *See Bell v. Wolfish,* 441 U.S. 520, 535 n. 16 (1979).

Due process rights of a pretrial detainee are at least as great as the Eighth Amendment rights of convicted prisoners. *See Montgomery v. Ray*, 145 F. App'x 738, 740 (3d Cir. 2005). The Third Circuit has evaluated medical care claims raised by pretrial detainees under the Fourteenth Amendment using the Eighth Amendment standard. *See Hubbard*, 399 F.3d at 166 n. 22 ("[E]ven though the constitutional protections afforded [to] prisoners and pretrial detainees against inadequate medical care arise from [the prohibition on cruel and unusual punishment and due process, respectively], the standards governing the provision of medical care to each class are similar.").

Prison officials violate the Eighth Amendment when they act with deliberate indifference to a prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). To sustain a constitutional claim for deliberate indifference to a serious medical need, a plaintiff must make (1) an objective showing that his medical needs were serious, and (2) a subjective showing that the defendants were deliberately indifferent to those medical needs. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth*

*Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987) (citation omitted).  A prison official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

However, "[p]rison medical authorities are given considerable latitude in the diagnosis and treatment of medical problems of inmates and courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment.'"  *Byrd v. Shannon*, No. 1:09-CV-1551, 2010 WL 5889519, at *4 (M.D. Pa. Nov. 24, 2010) (quoting *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir.1979)).  Mere disagreement over proper treatment does not state a claim upon which relief can be granted.  *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990); *Monmouth Cty. Corr. Inst'l Inmates,* 834 F.2d at 346 ("Courts, determining what constitutes deliberate indifference, have consistently held that mere allegations of malpractice do not raise issues of constitutional import. . . Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation.").  Likewise, negligence does not rise to an Eighth Amendment violation.  *See Estelle*, 429 U.S. at 105–06 ("a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment").

### 1.  Medical Defendants

As stated above, the deliberate indifference claim against PrimeCare will survive the current Rule 12(b)(6) challenge.  The question remains as to the pleading against the remaining individual Medical Defendants, including Defendants Young, Macut, Zeiders-Heichel, Drabich, and Thomas.  The factual dividing line for this claim is on January 10, 2020, when the Medical Defendants had EKG evidence that Plaintiff was in "severe cardiac arrest."  (Doc. 87, p. 11.) Therefore, the court will assess the deliberate indifference claims based on actions before and after the EKG.

First addressing the claims of deliberate indifference prior to the EKG, Plaintiff has failed to meet the second prong of a deliberate indifference claim regarding Defendants' actions.  In order to establish the second prong, Plaintiff must allege that the prison official knew of and disregarded "an excessive risk to inmate health or safety."  *Farmer*, 511 U.S. at 837.  In his third amended complaint, Plaintiff repeatedly states that prior to January 10, 2020, the remaining Medical Defendants did not know the cause of his symptoms, but treated him with pain medications and instructions to rest.  (Doc. 67.)  The court acknowledges Plaintiff's complaint includes allegations that nursing defendants did not provide additional care, but the nurses allegedly repeated the instructions of Defendants Young and Macut, both of whom are physicians who advised Plaintiff to lie down

and rest.  (*Id.*, pp. 8–11.)  Therefore, while Plaintiff may not agree with the medical care provided, i.e. the lie down and rest order, he was not actually denied medical care.  *See White*, 897 F.2d at 110 (Mere disagreement over proper treatment does not state a claim upon which relief can be granted.).  Furthermore, any negligence on the part of Medical Defendants does not rise to an Eighth Amendment violation.  *See Estelle*, 429 U.S. at 105–06 ("a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment").  Therefore, Plaintiff has failed to establish that any of the Medical Defendants were deliberately indifferent to a serious medical need prior to the EKG on January 10, 2020.

However, according to the alleged facts, starting on January 10, 2010, there was subjective knowledge on the part of Medical Defendants regarding a serious medical need as Plaintiff's EKG showed he was in cardiac arrest.  (Doc. 67, pp. 11–12.)  The facts alleged fail to demonstrate any deliberate indifference on the part of any Medical Defendants after the EKG results were obtained, with a single exception.  (*Id.*)

The sole exception was when Defendant Drabich delayed the call for the ambulance and delayed Plaintiff's transfer to the hospital at the instruction of Defendant Zimmerman.  Short delays in treatment generally do not rise to the level of deliberate indifference.  *See Rodriguez v. Thomas*, No. 1:CV-12-2090, 2015 WL

21

1470719, at *9 (M.D.Pa. Mar. 31, 2015) ("short delays unaccompanied by arbitrary or unduly burdensome bureaucratic procedures" do not rise to the level of deliberate indifference). Based on *Rodriguez*, the court previously concluded that ensuring appropriate staff is present at the jail and at the hospital is not "arbitrary" or "unduly burdensome" in a correctional institution context. (Doc. 64, p. 18.) However, the third amended complaint, unlike the second amended complaint, did not allege that the delay was to ensure adequate staffing during a shift change. Therefore, the claim against Defendant Drabich for delaying the call to the ambulance survives the Rule 12(b)(6) motion. The other deliberate indifference claims raised against the Medical Defendants will be dismissed. This dismissal will be with prejudice as this is Plaintiff's third amended complaint, and further leave to amend is considered futile.

### 2. Dauphin County Defendants and Defendant Horcher

Turning to the remaining Dauphin County Defendants, including Defendants Glenn, Burkins, and Zimmerman, and Defendant Horcher, the court finds that due to their reliance on medical opinions and the short delay in treatment, the allegations of events prior to January 10, 2020 do not rise to the level of a constitutional violation for deliberate indifference. However, their role in delaying care following the January 10, 2020 EKG will survive this Rule 12(b)(6) challenge.

The Third Circuit has stated that "[i]f a prisoner is under the care of medical experts, . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.  This follows naturally from the division of labor within a prison."  *Spruill v Gillis*, 372 F.3d 218, 236 (3d Cir. 2004.) Therefore, Defendant Glenn is not liable under a theory of deliberate indifference for failing to provide care after Plaintiff had spoken with Defendant Thomas, a nurse, just minutes before.  (Doc. 67, p. 9.)

Turning to the conduct following the January 10, 2020 EKG, which demonstrated "severe cardiac arrest," Plaintiff alleges that the delay in transport to the hospital and the delay in transfer to the ICU demonstrated deliberate indifference.  (Doc. 67.)  As discussed above, short delays in treatment generally do not rise to the level of deliberate indifference.  *See Rodriguez*, 2015 WL 1470719, at *9.  Specifically, "short delays unaccompanied by arbitrary or unduly burdensome bureaucratic procedures" do not rise to the level of cruel and unusual punishment.  *Id*.  The court has previously found that both delays were not accompanied by arbitrary and unduly burdensome bureaucratic procedures: "The court finds that ensuring that appropriate staff is present at the jail and at the hospital is not 'arbitrary' or 'unduly burdensome' in a correctional institution context."  (Doc. 64, p. 18.)  However, the third amended complaint fails to allege the rationale for the delay in calling the ambulance.  (Doc. 67, p. 12.)

Additionally, the rationale for the delay in transfer to the ICU was because "they just called and gave them this room number, and they didn't want to call back with a new number." (*Id.*)  Therefore, the third amended complaint states a claim for deliberate indifference against Defendants Zimmerman, Burkins, and Horcher, and these claims will survive the Rule 12(b)(6) challenge.

### F. The Negligence Claims Again the Medical Defendants Will Be Dismissed, But the Claims Against the Dauphin County Defendants and Defendant Horcher Will Survive

Plaintiff alleges negligence on the part of both Medical Defendants, Dauphin County Defendants, and Defendant Horcher.  (Doc. 67.)

#### 1. Medical Defendants

Medical Defendants argue that Plaintiff has not submitted the required certificate of merit to precede in a medical negligence claim.  (Doc. 81, pp. 33–35.)

In Pennsylvania, medical negligence, or medical malpractice, is defined as "the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services." *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003) (citing *Hodgson v. Bigelow*, 7 A.2d 338 (Pa. 1939)).  To establish a cause of action for negligence under Pennsylvania law, a plaintiff must prove the following elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the

conduct and the resulting injury; and (4) actual damages.  *See Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005) (citing *In re TMI*, 67 F.3d 1103, 1117 (3d Cir. 1995)).

Pennsylvania Rule of Civil Procedure 1042.3 requires a plaintiff alleging professional negligence to file a certificate of merit within 60 days of filing the complaint.  Pa. R. Civ. P. 1042.3.  The certificate must include one of the following: a written attestation by "an appropriate licensed professional" that there is a "reasonable probability that the care, skill or knowledge exercised or exhibited" by the defendant "fell outside acceptable professional standards," and that this was the cause of the plaintiff's injuries; a statement that the claim against the defendant is based only on the professional negligence of those for whom the defendant is responsible; or a statement that expert testimony is unnecessary for the plaintiff's claim to proceed.  Pa. R. Civ. P. 1042.3(a)(1)-(3).  Failure to file a certificate of merit is fatal to a plaintiff's claim.  Pa. R. Civ. P. 1042.7.

The requirements of Rule 1042.3 are substantive in nature and, therefore, federal courts in Pennsylvania must apply these prerequisites of Pennsylvania law when assessing the merits of a medical malpractice claim.  *See Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262-65 (3d Cir. 2011); *Iwanejko v. Cohen & Grigsby*, P.C., 249 F. App'x 938, 944 (3d Cir. 2007).  This requirement applies with equal force to counseled complaints and to *pro se* medical malpractice actions

brought under state law.  *See Hodge v. Dep't of Justice*, 372 F. App'x 264, 267 (3d

Cir. 2010) (affirming district court's dismissal of medical negligence claim for

failure to file a certificate of merit).

The Pennsylvania Supreme Court has noted that "[b]ecause the negligence

of a physician encompasses matters not within the ordinary knowledge and

experience of laypersons[,] a medical malpractice plaintiff must present expert

testimony to establish the applicable standard of care, the deviation from that

standard, causation and the extent of the injury." *Toogood*, 824 A.2d at 1145.  A

very narrow exception applies "where the matter is so simple or the lack of skill or

care is so obvious as to be within the range of experience and comprehension of

even non-professional persons." *Hightower-Warren v. Silk*, 698 A.2d 52, 54 n.1

(Pa. 1997).  Plaintiff argues that Pa.R.C.P. 1042.3 does not apply in federal court

as it is a procedural rule.  (Doc. 99, pp. 9–12.)  However, this argument is

contradicted by the Third Circuit caselaw cited above which defines Pa.R.C.P.

1042.3 as substantive.  The court acknowledges that the Third Circuit has found

Pa.R.C.P. 1042.3 as procedural in Federal Tort Claims Act cases, but it has not

been extended to cases with supplemental jurisdiction over state law claims.  *See*

*Wilson v. United States*, 79 F.4th 312, 316–20 (3d Cir. 2023).

Here, Plaintiff has failed to file the required certificate of merit within the

60-day time period provided by rule.  Therefore, this claim will be dismissed.  The

court acknowledges that typically, the proper procedure would be to dismiss the negligence claim without prejudice. *See Stoud v. Abington Mem. Hosp.*, 546 Supp. 2d 238, 250 (E.D. Pa. 2008) ("[T]he proper procedure in federal practice is to file with the court a motion pursuant to Fed. R. Civ. P. 12(b) to dismiss the professional negligence claim without prejudice" based on this missing certificate of merit.). However, Plaintiff was aware of this requirement as it was the rationale for the dismissal of the negligence claim raised in the second amended complaint. (Doc. 64, pp. 11–12, 20–22.) Therefore, the court finds it appropriate to dismiss these claims with prejudice at this juncture.

### 2.   Dauphin County Defendants and Defendant Horcher

As set forth above, to establish a general cause of action for negligence under Pennsylvania law, a plaintiff must prove the following elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages. *See Northwestern Mut. Life Ins. Co.*, 430 F.3d at 139.

Plaintiff's previous negligence claims raised in the second amended complaint against the Dauphin County Defendants and Defendant Horcher were dismissed because the second amended complaint alleged that when a medical request form was requested,  it was in fact provided.  (Doc. 64, pp. 22–23.) Additionally, in the second amended complaint Plaintiff failed to allege any delay

27

in transport to the hospital or to the ICU that resulted in any injury.  (*Id*.)  Here, in

the third amended complaint, Plaintiff did <u>not</u> allege that medical request forms

were provided and he <u>did</u> allege that the delays resulted in further injury.  (Doc. 67,

pp. 9, 12.)  Therefore, Plaintiff's claims will survive the Rule 12(b)(6) challenge.

### G. The Intentional Infliction of Emotional Distress Claim Will Survive

A claim for intentional infliction of emotional distress under Pennsylvania

law requires four elements: "(1) the conduct must be extreme and outrageous; (2)

the conduct must be intentional or reckless; (3) it must cause emotional distress;

and (4) the distress must be severe."  *Bruffett v. Warner Commc'ns, Inc.*, 692 F.2d

910, 914 (3d Cir. 1982).  The intentional infliction of emotional distress claim

raised in the second amended complaint was dismissed because Plaintiff alleged he

was misdiagnosed with anxiety.  (Doc. 64, pp. 23–24.)  However, in the third

amended complaint Plaintiff made no such allegations.  Therefore, the court will

not dismiss the intentional infliction of emotional distress claim.

### H. Plaintiff's Motion for Sanctions and Handwriting Expert Will Be Denied

Plaintiff filed a motion for sanctions alleging that Defendants destroyed

medical records to conceal their inadequate care.  (Doc. 68.)  However, the court

notes that Medical Defendants filed a motion for summary judgment which

included multiple medical records and inmate request forms.  (Doc. 74-1.)

Additionally, discovery has not yet occurred in this action.  Therefore, Plaintiff's

mere accusation that records were destroyed is not sufficient to grant the motion at this time.  However, following discovery, should there be proof of spoliation of evidence, Plaintiff may renew his motion.

Plaintiff also filed a motion for a handwriting expert in furtherance of his accusations that records were destroyed.  (Doc. 101.)  Specifically, Plaintiff alleges that the evidence submitted in furtherance of the summary judgment motion was fabricated and forged.  (*Id*.)  However, since Plaintiff's motion for sanctions will be denied and discovery has not yet occurred, his motion for a handwriting expert will be denied without prejudice to later renewing the request.

## I.  Plaintiff's Motion for a Medical Expert Will Be Denied

Plaintiff filed two identical motions to appoint a medical expert and counsel. (Docs. 103, 113.)  However, as discussed above, there has been no discovery in this action.  Therefore, the motions for a medical expert will be denied at this procedural posture of the action because the appointment of a medical expert is premature.  Plaintiff may renew his request following discovery if such an expert is necessary.

## J.  Plaintiff's Motion for Appointment of Counsel Will be Denied

As stated above, Plaintiff filed two identical motions to appoint medical exert and counsel.  (Docs. 103, 113.)

Although prisoners have no constitutional or statutory right to appointment of counsel in a civil case, the court has discretion to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *see Houser v. Folino*, 927 F.3d 693, 697 (3d Cir. 2019). The appointment of counsel is a privilege, not a statutory or constitutional right. *Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However, representation by counsel may be appropriate under certain circumstances after a finding that the plaintiff's case has arguable merit in fact and law. *Tabron*, 6 F.3d at 155. If the court finds that the plaintiff has crossed this threshold inquiry, the court should consider the following factors in deciding whether to request a lawyer to represent an indigent plaintiff:

> (1)   the plaintiff's ability to present his or her own case;
> (2)   the complexity of the legal issues;
> (3)   the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
> (4)   the plaintiff's ability to retain counsel on his or her own behalf;
> (5)   the extent to which a case is likely to turn on credibility determinations, and;
> (6)   whether the case will require the testimony of expert witnesses.

*Tabron*, 6 F.3d at 155-57. This list of factors is non-exhaustive, and no single factor is determinative. *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002) (citing *Parham v. Johnson*, 126 F.3d 454, 458 (3d Cir. 1997)). Instead, these

factors serve as guideposts for the district courts to ensure that the precious

commodity of volunteer attorney time is not "wasted on frivolous cases." (*Id.*)

Plaintiff's request was made as an alternative to the appointment of a

medical expert. (Docs. 103, 113.)  However, as stated above, discovery has not

occurred in this action.  Therefore, a request for a medical expert is premature.

Thus, appointment of counsel is not warranted at this time.  If future proceedings

demonstrate the need for counsel, the matter may be reconsidered either *sua sponte*

or pursuant to a properly filed motion.

### CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss will be granted in

part and denied in part.  All claims against Dauphin County will be dismissed with

prejudice.  All claims against Defendants Clark and Pries will be dismissed with

prejudice.  The deliberate indifference claims against Defendants PrimeCare,

Drabich, Zimmerman, Burkins, and Horcher will survive.  The deliberate

indifference claims against Defendants Young, Macut, Zeiders-Heichel, Thomas,

and Glenn will be dismissed with prejudice.  The negligence claims against the

Medical Defendants will be dismissed with prejudice.  The negligence claims

against the Dauphin County Defendants and Defendant Horcher will survive.  The

intentional infliction of emotional distress claims against Defendants PrimeCare,

Drabich, Young, Macut, Zeiders-Heichel, Thomas, Glenn, Zimmerman, Burkins,

and Horcher will survive.  Plaintiff's motions for sanctions, a handwriting expert, a medical expert, and the appointment of counsel will be denied.  Defense Attorneys Lavery and Weed are required to file a status report clarifying their representation of Defendant Horcher.  Defendants will file an answer to the third amended complaint addressing the surviving claims.

An appropriate order follows.

<u>s/Jennifer P. Wilson</u>
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated:  March 25, 2024