**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTWAN L. RICHARDSON, | : | Civil No. 1:22-CV-00029 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BRIAN S. CLARK, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

**<u>MEMORANDUM</u>**

This case illustrates why the practice of medicine involves both art and

science.  It highlights the frustrating and sometimes prolonged diagnostic process

used to identify the source of a patient's symptoms while that patient continues to

suffer the symptoms and the fear of not knowing why he feels unwell.  In

December of 2019 Antwan L. Richardson ("Plaintiff") repeatedly sought treatment

for his symptoms of pain and shortness of breath.  Despite extensive treatment by

the medical staff at Dauphin County Prison, in January of 2020, Plaintiff was taken

to the hospital via ambulance and diagnosed with massive saddle embolism with

extensive bilateral branch pulmonary emboli.  Now Plaintiff has brought suit

in this court asserting that the correctional staff and medical staff at Dauphin

County Prison should be held liable for their actions in December of 2019 and

January of 2020.

1

Before the court are Defendants' motions for summary judgment.  (Docs. 210, 213.)  Additionally pending is a motion to supplement the statement of material facts filed by the Dauphin County Defendants.  (Doc. 218.)  The court will allow the Dauphin County Defendants to supplement their statement of material facts, and deny the motions for summary judgment in part and grant the motions for summary judgment in part.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff initiated this action in January of 2022.  (Doc. 1.)  The initial complaint named thirteen defendants: (1) Brian Clark, Warden; (2) William Young ("Young"), Medical Director; (3) Doug Macut ("Macut"), Medical Director; (4) Kayla Zeiders-Heichel ("Zeiders-Heichel"), nurse; (5) Addonna Thomas ("Thomas"), nurse; (6) Tia Drabich ("Drabich"), nurse; (7) Michael Pries, Commissioner; (8) PrimeCare Medical, Inc. ("PrimeCare"); (9) Mark Neidigh, Correctional Officer Captain; (10) Taylor Glenn ("Glenn")[1], Correctional Officer; (11) John Doe 1, Correctional Officer; (12) John Doe 2, Correctional Officer; and (13) Dauphin County, Pennsylvania, supervisor.  (Doc. 1.)  In February of 2022, Plaintiff filed an amended complaint, which corrected the names of the John Doe defendants to Darrell Horcher ("Horcher") and Andrew Burkins ("Burkins") and

---

[1] Glenn was married on November 6, 2022, and now goes by the surname Scott.  (Doc. 214-2, p. 1.)  However, for the sake of clarity, the court will refer to her by the name she used at the time of the alleged incident, Glenn.

2

changed the name of Defendant Mark Neidigh to Captain Ted Zimmerman ("Zimmerman").  (Doc. 19.)

Twelve of the named defendants filed motions to dismiss the amended complaint.  (Docs. 25, 27).  In response, Plaintiff filed a second amended complaint on May 13, 2022, naming the same thirteen defendants and adding Dauphin County Prison and an unidentified Dauphin County Prison Supervisor as defendants.  (Doc. 36.)  The pending motions to dismiss the amended complaint were denied as moot, and Defendants filed subsequent motions to dismiss the second amended complaint.  (Docs. 37, 38, 39.)  On February 28, 2023, this court granted Defendants' motions to dismiss the second amended complaint and granted Plaintiff an opportunity to file a third amended complaint.  (Docs. 64, 65.)

On March 8, 2023, the court received and docketed Plaintiff's third amended complaint.  (Doc. 67.)  This third amended complaint named the same thirteen individuals identified in the second amended complaint and also named Dauphin County.  (*Id*., pp. 3–6.)[2]  It did not name Dauphin County Prison or a Dauphin County Prison Supervisor.[3]  Thirteen of the fourteen Defendants filed motions to

---

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

[3] In their statement of facts in support of their motion for summary judgment, the Dauphin County Defendants allege that the third amended complaint names an unidentified Dauphin County Supervisor as a party.  (Doc. 214, p. 3.)  However, the complaint clearly names Dauphin County as a party, and its position is identified as supervisor.  (Doc. 67, pp. 2, 6.)  All claims against Dauphin County were dismissed with prejudice in March of 2024.  (Docs. 118, 119.)

dismiss the third amended complaint. (Docs. 73, 77.) The thirteen active defendants were divided into two groups: (1) the "Medical Defendants" including PrimeCare Medical, Inc., Young, Macut, Zeiders-Heichel, Thomas, and Drabich; and (2) the "Dauphin County Defendants" including Dauphin County, Clark, Pries, Zimmerman, Glenn, and Burkins. (Docs. 73, 77.) There was some ambiguity regarding Horcher that was resolved in April of 2024, and he was added to the Dauphin County Defendants. (Doc. 120.) Plaintiff filed a brief in opposition to both groups of Defendants' motions to dismiss. (Doc. 99.) Dauphin County Defendants filed a reply. (Doc. 100.) Plaintiff also filed a motion to appoint a forensic handwriting and computer analysis expert and two motions to appoint a medical expert and/or counsel. (Docs. 101, 103, 113.)

On March 25, 2024, the court entered a memorandum and order finding that the claims of deliberate indifference against Defendants PrimeCare, Drabich, Zimmerman, Burkins, and Horcher, negligence against Defendants Zimmerman, Glenn, Burkins, and Horcher, intentional infliction of emotional distress against Defendants PrimeCare, Young, Macut, Zeiders-Heichel, Thomas, Drabich, Zimmerman, Glenn, Burkins, and Horcher would proceed. (Docs. 118, 119.) The court has denied Plaintiff's repeated motions for a handwriting expert and a

---

Therefore, the court will not address the nonexistent defendant Dauphin County Supervisor further in this action.

medical expert.  (Docs. 119, 200.)  Defendants then answered the complaint. (Docs. 123, 125.)

On May 29, 2025, the Medical Defendants filed a motion for summary judgment supported by a statement of facts and a brief in support.  (Docs. 210, 211, 212.)  On May 30, 2025, the Dauphin County Defendants filed a motion for summary judgment supported by a statement of facts and brief in support.  (Docs. 218, 129, 220.)  On June 5, 2025, Dauphin County Defendants filed a motion to supplement their statement of material facts with a missing affidavit.  (Doc. 218.) In December of 2025, Plaintiff filed briefs in opposition, which he titled replies. (Docs. 251, 254.)  On December 30, 2025, Plaintiff filed a brief in opposition of the Medical Defendants' motion for summary judgment.  (Doc. 254.)  In January of 2026, both groups of Defendants filed reply briefing (Docs. 256, 259.)

The court will now address all pending motions.

### JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States. Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at Dauphin County Prison located in Dauphin County, Pennsylvania, which is located within this district.  *See* 28 U.S.C. § 118(b).

## STANDARD OF REVIEW

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.*  "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)).  The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249.  Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

6

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**DISCUSSION**

### A. The Dauphin County Defendants' Motion to Supplement Their Statement of Facts Will be Granted.

On May 30, 2025, the Dauphin County Defendants filed their motion for summary judgment, their statement of facts, and their brief in support. (Docs. 213, 214, 215.) On June 5, 2025, Dauphin County Defendants filed a motion to supplement the statement of facts to include an exhibit that had been omitted from the statement of facts at Exhibit O. (Doc. 218.) The court will grant this motion and deem the document at 217 as Exhibit O in the Dauphin County Defendants' statement of facts.

### B. Plaintiff's Responses to Defendants' Motions for Summary Judgment Do Not Conform with Local Rules.

Local Rule 7.6 imposes an affirmative duty on Plaintiff to respond to motions, and provides, in relevant part:

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion.* Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition.
>
> A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

8

Local Rule 7.6 (*emphasis added*).

Local Rule 56.1 sets forth the following requirements for Plaintiff's response to any motion for summary judgment:

> A motion for summary judgment filed pursuant to Fed.R.Civ.P.56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.
>
> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried.
>
> Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.
>
> All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

L.R. 56.1.

Here, Plaintiff never filed briefs in opposition to the Dauphin County Defendants' motion for summary judgment. Instead, he filed what he titled to be "replies" that summarized the procedural history of each pending motion but did not present arguments concerning the motion for summary judgment. (Docs. 249, 251.) Then, he filed a brief in opposition to the Medical Defendants' motion for summary judgment. (Doc. 254.) It appears that most of Plaintiff's arguments were contained in his responses to the Defendants' statements of material fact that he

9

characterized as "objections." (Docs. 250, 253.) Therefore, there is nothing short and concise about Plaintiff's filings in response to Defendants' statements of material facts.

The court finds that Plaintiff's responses to Defendants' motions and statements of material fact are not in compliance with the Local Rules. As such, the court finds the Dauphin County Defendants' motion for summary judgment to be unopposed. To the extent that Plaintiff's "objections" to the statements of material fact cannot be understood to present some form of opposition to Defendants' motions, the court will not attempt to glean from the record any opposition that could be raised by Plaintiff.

### C. The Dauphin County Defendants' Motion for Summary Judgment Will Be Granted in Part and Denied in Part.

#### 1. Material Facts

Based on Defendants' statement of material facts and Plaintiff's response to that statement, the court is able to glean the following material facts on which the parties agree.

In December of 2019, Plaintiff complained of and sought medical treatment for chest pain and shortness of breath. This included a request for emergency medical treatment to Glenn on December 15, 2019, which resulted in Glenn instructing Plaintiff to file a request slip. (Doc. 214-2; Doc. 253-3, p. 4.) Plaintiff filed this request slip, received an ultrasound on December 16, 2019, and was seen

10

by William Young, M.D. on December 20, 2019.  (Doc. 214-20, pp. 46, 49–50, 60–61; 69; Doc. 253-8, pp. 4, 8–9, 21–22.)

The parties also agree that on January 10, 2020, Plaintiff reported to the medical department at Dauphin County Prison reporting of chest pains.  An EKG was performed at 9:23 p.m., Jennifer Morz, PA-C ("Mroz") was called and she ordered Plaintiff be taken to the hospital via ambulance, and Emergency Medical Services ("EMS") was called at 9:58 p.m.  (Doc. 214-4; Doc. 214-20, pp. 20–21, 34, 39; Doc. 253-8, p. 11, 32; Doc. 253-18.)  Plaintiff then arrived at UPMC Harrisburg Hospital at 10:29 p.m. where he was treated and diagnosed with a massive saddle embolism with extensive bilateral branch pulmonary artery emboli. (Doc. 214-20, pp. 21, 150–171; Doc. 253-4, pp. 12, 38–49; Doc. 253-18.)

At Plaintiff's depositions, he refused to acknowledge his handwriting or signature on the grievances attributed to him concerning the medical treatment at Dauphin County Prison stating that he was not a handwriting expert.  (Doc. 214-14; Doc. 214-15; Doc. 253-2.)

### 2.  Exhaustion of Administrative Remedies

Dauphin County Defendants argue that since Plaintiff is unwilling to authenticate the grievances he filed in his depositions, he cannot establish that he exhausted his administrative remedies and his claims must be dismissed under the Prison litigation Reform Act of 1995 ("PLRA").  (Doc. 215.)

11

The PLRA, 42 U.S.C. § 1997e et seq., requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations. *See id.* § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted). Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be granted by the administrative system. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006). However, there are situations in which a grievance procedure may be rendered "unavailable" to an inmate, such as when a prison official thwarts an inmate's ability to use it, *Ross*, 578 U.S. at 643–44, when intimidation by means of "serious threats of retaliation and bodily harm" prevent an inmate from filing, *Rinaldi v. United* States, 904 F.3d 257, 266–67 (3rd Cir. 2018), or when a prison has "rendered its administrative remedies unavailable . . . when it failed to timely (by its own procedural rules) respond to [an inmate's] grievance and then repeatedly ignored his follow-up requests for a decision on his claim," *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016).

Under Third Circuit precedent, "exhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." *Small v. Camden Cty.*, 728 F.3d 265, 269 (3d Cir. 2013) (citing *Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010)); *see also Drippe*, 604 F.3d

at 781 ("Juries decide cases, not issues of judicial traffic control.  Until the issue of exhaustion is resolved, the court cannot know whether it is to decide the case or the prison authorities are to.") (quoting *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008)); *cf. Wilkerson v. United States*, No. 3:13-1499, 2014 WL 1653249, at *9 (M.D. Pa. Apr. 24, 2014) ("[I]f there is a dispute of material fact, the court should conduct a plenary trial on the contested facts prior to making [an exhaustion of administrative remedies] determination.").  "Although the availability of administrative remedies to a prisoner is a question of law, it necessarily involves a factual inquiry."  *Small*, 728 F.3d at 271 (citations omitted).

Plaintiff's refusal to acknowledge his grievances does not absolve Defendants of their duty to establish that he did not exhaust his administrative remedies.  The Third Circuit has been clear that failure to exhaust administrative remedies is an affirmative defense and the burden falls to the party raising the defense.  *Smith v. Mensinger*, 293 F.3d 641, 647 n.3 (3d Cir. 2002); *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Dauphin County Defendnats have presented Plaintiff's deposition demonstrating that he refused to acknowledge the grievances, but they have not produced these grievances and their respective appeals.  (Doc. 214.)  Therefore, they have not met their burden of establishing they Plaintiff did not exhaust his administrative remedies.  Undoubtedly, Plaintiff's refusal to acknowledge these

13

documents attributed to him creates a certain amount of frustration, but it does not resolve the factual question of whether these grievances were filed and properly appealed. Therefore, the court finds that there is an issue of material fact as to whether Plaintiff exhausted his administrative remedies.

The court is currently addressing Defendants' motions for summary judgment and is limited to the record presented by the parties with the motions. Therefore, this is not a suitable procedural posture for the court to make a factual determination on this jurisdictional issue. The court will deny the Dauphin County Defendants' motion for summary judgment on the issue of administrative exhaustion but will ensure this issue is resolved before the case is presented to a jury by holding an exhaustion hearing on the surviving claims.

### 3. Deliberate Indifference

The remaining deliberate indifference claims against Defendants Burkins, Zimmerman, and Horcher are limited to their alleged delay in care following the January 10, 2020 EKG. (Doc. 118, pp. 22–24.)

Prison officials violate the Eighth Amendment when they act with deliberate indifference to a prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). To sustain a constitutional claim under the Eighth Amendment for inadequate medical treatment, a plaintiff must make (1) an objective showing that his medical needs were serious, and (2) a subjective showing that the

14

defendants were deliberately indifferent to those medical needs.  *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987) (citation omitted).  A prison official is deliberately indifferent when he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

However, the Eighth Amendment does not apply until an inmate has been both convicted of and sentenced for his crimes.  *See Graham v. Connor,* 490 U.S. 386, 392 n. 6 (1989); *Hubbard v. Taylor,* 399 F.3d 150, 164 (3d Cir. 2005).  Thus, an inmate awaiting sentencing must look to either the Fifth Amendment's or the Fourteenth Amendment's Due Process Clause for protection. *See Bell,* 441 U.S. at 535 n. 16.

Due process rights of a pretrial detainee are at least as great as the Eighth Amendment rights of convicted prisoners. *See Montgomery v. Ray*, 145 F. App'x 738, 740 (3d Cir. 2005). The Third Circuit has evaluated medical care claims raised by pretrial detainees under the Fourteenth Amendment using the Eighth Amendment standard.  *See Hubbard*, 399 F.3d at 166 n. 22 ("[E]ven though the constitutional protections afforded [to] prisoners and pretrial detainees against

inadequate medical care arise from [the prohibition on cruel and unusual punishment and due process, respectively], the standards governing the provision of medical care to each class are similar.").

Here, Plaintiff was a pretrial detainee at the time of the alleged events. (Doc. 67, p. 3.)  Therefore, his deliberate indifference claims are brought under the Fourteenth Amendment, but the court will apply the Eighth Amendment deliberate indifference standard.

### i.  Defendant Zimmerman

The parties agree that an abnormal EKG was performed at 9:23 p.m. on January 10, 2020.  (Doc. 214-4; Doc. 214-20, p. 39; Doc. 253-8, p. 32.)  The parties agree that following this EKG, Angela Barnette contacted Mroz who ordered Plaintiff be taken to the hospital via ambulance.  (Doc. 214-4; 214-20, p. 34; Doc. 253-8, p. 11.)  The parties also each presented the EMS call log showing that EMS was contacted at 9:58 p.m.  (Doc. 214-20, pp. 20–21; Doc. 253-18.)

However, there appears to be an issue of material fact surrounding the events that occurred between Barnett's call to Mroz and the 9:58 p.m. call to EMS. Defendants have presented evidence that at 9:50 p.m., Drabich contacted Zimmerman to inform him that Mroz had ordered Plaintiff to be transported by ambulance to the hospital for further medical care and requested that he coordinate prison security and staffing needs for the transport.  (Doc. 214-4; Doc. 214-6; Doc.

16

214-20, pp. 1–2.) Plaintiff presents his own affidavit in support of his alleged facts, which includes statements that Drabich called Zimmerman immediately after the call with Mroz, and Zimmerman refused to contact EMS until after shift change and instructed Drabich to wait to contact EMS until he called back. (Doc. 253-3, pp. 4–5.) Then Drabich waited until Zimmerman called her back before contacting EMS. (*Id*.) The affidavits of Drabich and Zimmerman deny this exchange occurred. (Doc. 214-4; Doc. 214-5.)

This issue of material fact is unresolved. Defendants present no evidence demonstrating there was no delay between the call to Mroz and the call to EMS. Instead, the parties appear to agree that by 9:38 p.m. Mroz had been called based on a timestamped note showing that the call had occurred prior to the note being entered in Plaintiff's medical file. (Doc. 214-20, p. 36; Doc. 253-8, p. 11.) There is a report of extraordinary occurrence created by Zimmerman stating that he received a call at 9:50 p.m. requesting transport. (Doc. 214-20.) Outside of this, the court can only rely on Drabich's, Zimmerman's, and Plaintiff's affidavits which are contradictory. (Docs 214-4; 214-6; 253, pp. 4–5.) Therefore, the time Mroz was called and the time and number of calls that occurred between Drabich and Zimmerman appear to be an issue of material fact in dispute. As such, the court will deny the motion for summary judgment as to the deliberate indifference claim against Defendant Zimmerman.

17

Defendants also allege that Zimmerman has qualified immunity for his actions on January 10, 2020. (Doc. 215.) Qualified immunity applies to government officials performing discretionary functions unless (1) the "facts, taken in the light most favorable to the plaintiff, demonstrate a constitutional violation," and (2) the alleged right was clearly established at the time of the violation. *See Thomas*, 88 F.4th at 281 (citation omitted). A clearly established right is one so apparent that "every reasonable official would understand that what he is doing is unlawful." *James v. N.J. State Police*, 957 F.3d 165, 169 (3d Cir. 2020) (quoting *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012).

It is defendants' burden to establish their entitlement to qualified immunity, *see Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014), and their argument is largely premised on the idea that the evidence does not show a constitutional violation. (Doc. 215, pp. 42–43.) Here, there is an unresolved issue of material fact concerning Zimmerman's communications with Drabich on January 10, 2020. *See supra*. Furthermore, it is clearly established that prison officers may not be deliberately indifferent to an inmate's serious medical needs. *Estelle*, 249 U.S. at 104–05. Plaintiff's account of events stating that Zimmerman purposefully

18

delayed an ambulance that was ordered by a medical provider would potentially violate this clearly established law.  Therefore, the court will deny Defendants' motion for summary judgment on the basis of qualified immunity.

### ii.  Defendants Burkins and Horcher

The Fourteenth Amendment deliberate indifference claim against Defendants Burkins and Horcher that survived Rule 12 motions is premised on Plaintiff's allegation that while Plaintiff was under the care of providers at UPMC Harrisburg Hospital, Burkins and Horcher refused to let Nurse Miller take Plaintiff to an intensive care unit.  (Doc. 67, p. 12.)

Defendants have provided affidavits from Burkins and Nurse Miller denying that the interaction Plaintiff alleges ever took place.  (Doc. 214-8; Doc. 214-9.)  As a response to Defendants' statement of facts, Plaintiff alleges that he misidentified the nurse, and in fact, Burkins and Horcher refused to allow Nurse Melcher to move Plaintiff into the ICU.  (Doc. 253, pp. 28–29.)  As evidence in support of his misidentification, Plaintiff cites a motion for an extension of time he filed with the court and medical records stating that Nurse Andrea Melcher was the nurse who transferred him to the ICU.  (Doc. 253, pp. 28–29; Doc. 222; Doc. 253-4, p. 38.)  However, in reviewing the medical records, Nurse Melcher was the nurse who initially interacted with Plaintiff upon his arrival at the Emergency Room.  (Doc. 253-4, p. 38.)  She is identified as "22:29 Expected arrival Andrea Melcher, RN."

19

(*Id*.)  It is later identified that Nurse Melcher was the individual who entered the note that Plaintiff was moved to a room in the emergency department at 22:36 and completed triage from 22:40 to 22:46.  (*Id*., p. 39–41.)  The medical records show that Carson Adams, M.D. entered the decision to hospitalize Plaintiff and Sunita Neupane ordered Plaintiff transferred to critical care at 23:51.  (Doc. 253-4, p. 41.) Following additional testing including blood work and imaging, Plaintiff was admitted as an inpatient by Sunita Neupane, M.D. at 00:49 on January 11, 2020. (*Id*., p. 45.)  At 01:20, Carson Adams, M.D. entered a note that Plaintiff will be admitted to the intensive care unit for further treatment and management.  (*Id*., p. 46.)  At 02:07, Nurse Melcher provided a report to the next shift's nurse.  (*Id*.) Plaintiff was then transferred from "HHYellow 28 to room HHBlue 6" by Connie Lauffer, RN, and Melanie Miller, RN then enters Plaintiff's arrival at 02:21.  (*Id*., p. 47.)

Seeing as the ambulance arrived at the hospital at 10:29 p.m. (Doc. 214-20, pp. 20–21) and the medical records demonstrate that Nurse Melcher was not the individual who transferred Plaintiff to the ICU, the evidence Plaintiff cites does not support his allegation that he misidentified the nurse who transported him from the Emergency Room to the ICU.

Therefore, Defendants have presented evidence that the refusal by Burkins and Horcher did not occur.  Plaintiff's response that he identified the incorrect

nurse is not supported by the evidence Plaintiff cites.  As such, summary judgment will be granted as to the Fourteenth Amendment deliberate indifference claim against Defendants Burkins and Hocher.

### 4. Negligence

The negligence claims that survived the Rule 12 motions are brought against Defendants Glen, Zimmerman, Burkins, and Horcher.  (Doc. 119.)

To establish a cause of action for negligence under Pennsylvania law, a plaintiff must prove the following elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages.  *See Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005) (citing *In re TMI*, 67 F.3d 1103, 1117 (3d Cir. 1995)).

### i. Defendant Glenn

Plaintiff alleges that he requested medical assistance from Glenn on December 15, 2019 and was denied.  (Doc. 67, p. 9.)

Defendants have submitted evidence in the form of an affidavit from Glenn and medical records in support of their assertion that Plaintiff cannot establish the element of causation in his negligence claim.  (Doc. 214-2.)  Of particular importance is the evidence that Plaintiff submitted a sick call slip on December 15, 2019 after Glenn denied his request for medical care and Plaintiff was treated on

December 16, 2019.  Plaintiff included an incident report completed by Glenn stating that on December 15, 2019, Plaintiff reported to him that he was experiencing a medical emergency and needed ibuprofen, Glen then advised Plaintiff that there was no medical emergency noting that a nurse was standing "right there" and directed Plaintiff to completed a request slip.  (Doc. 214-20, p. 10.)  Plaintiff filed the request slip seeking treatment on December 16, 2019.  (Doc. 214-20, p. 69.)  On December 16, 2019, Plaintiff received an abdominal ultrasound, with no acute findings.  (Doc. 214-20, pp. 35, 46, 49–50.)  Plaintiff was then seen on December 20, 2019 by William Young, M.D. who treated him with Motrin.  (Doc. 214-20, pp. 60–61.)

This evidence demonstrates that Plaintiff cannot prove that the December 15, 2019 denial of treatment request by Glenn resulted in Plaintiff's ultimate hospitalization on January 10, 2020.  Plaintiff provides no response to Defendants' causation argument in his response to the statement of facts.  (Doc. 253.)  Instead, he makes repeated references to the affidavits of other inmates who stated he appeared in distress in December of 2019.  (*Id*.)  Seeing as Plaintiff was promptly seen the next day and treated by medical professionals, the third factor of Plaintiff's negligence claim fails.  The court will grant Dauphin County Defendants' motion for summary judgment on the claim of negligence against Defendant Glenn.

### ii.  Defendant Zimmerman

As set forth above, there is an issue of material fact concerning the number of phone calls that occurred between Zimmeran and Drabich on January 10, 2020. Questions remain as to whether there were one or two phone calls with Zimmerman and whether Zimmerman instructed Drabich to delay calling the ambulance.  Defendants submitted affidavits of Zimmerman and Drabich denying the alleged conversations and Plaintiff provided an affidavit stating he overheard the alleged conversations.  *See supra*.  Since there is an unresolved issue of material fact concerning the negligence claim against Defendant Zimmerman, the court will deny the motion for summary judgment as to this claim.

### iii. Burkins and Horcher

As set forth above, Defendants have submitted evidence from Burkins and Nurse Miller stating that the alleged denial of care did not occur at the hospital on January 10, 2020.  Plaintiff's response was that he had named the wrong nurse in his complaint.  (Doc. 253.)  However, the record did not support Plaintiff's response.  Therefore, based on the evidence presented by Defendants and Plaintiff's inability to submit evidence that establishes an issue of material fact on this claim, the motion for summary judgment will be granted in regards to the negligence claim against Burkins and Horcher.

### 5.  Intentional Infliction of Emotional Distress

Following Rule 12 motions, the claim of intentional infliction of emotional distress survives against Defendants Glenn, Zimmerman, Burkins, and Horcher. (Doc. 119.)

A claim for intentional infliction of emotional distress under Pennsylvania law includes four elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Bruffett v. Warner Commc'ns, Inc.*, 692 F.2d 910, 914 (3d Cir. 1982).

The "'extreme and outrageous' standard is not easily satisfied" and "mere insults, indignities, threats, annoyances, petty oppressions, and other trivialities" do not constitute the type of conduct necessary to sustain a claim of intentional infliction of emotional distress. *Shumate v. Twin Wire Hospitality, LLC*, 655 F.Supp.2d 521, 543 (M.D. Pa. Aug 13, 2019) *quoting Bowersox v. P.H. Glatfelter Co.,* 677 F.Supp. 307, 310 (M.D. Pa. 1988).

### i.  Defendant Glenn

As set forth above, Defendant Glenn's conduct on December 15, 2019 did not constitute negligence.  She provided Plaintiff with a request slip, Plaintiff completed the request slip, and Plaintiff received care the next day.  As such, Plaintiff cannot establish that the conduct was extreme or outrageous.  The court

acknowledges that there is some dispute as to the words exchanged between Plaintiff and Glenn on December 15, 2019, with Plaintiff stating that Glenn used unprofessional language first and Glenn stating that Plaintiff used unprofessional language first, these facts are not material to the claim.  (Doc. 214-2; Doc. 253-3, p. 4.)  "[M]ere insults, indignities, threats, annoyances, petty oppressions, and other trivialities" do not constitute the type of conduct necessary to sustain a claim of intentional infliction of emotional distress.  *Shumate*, 655 F.Supp.2d at 543. The court will grant the motion for summary judgment as to the intentional infliction of emotional distress claim against Defendant Glenn.

### ii.  Defendant Zimmerman

As set forth above, there is an issue of material fact concerning the phone call or calls that occurred between Zimmerman and Drabich on January 10, 2020 and whether or not Zimmerman delayed the call the EMS for non-medical reasons. *See supra*.  Arguably, Plaintiff's version of events on January 10, 2020 may rise to the level of extreme and outrageous in the eyes of a jury.  Therefore, the court will deny the motion for summary judgment as to the claim of intentional infliction of emotional distress raised against Defendant Zimmerman.

### iii. Defendants Burkins and Horcher

As set forth above, Defendants presented evidence that the denial of treatment that Plaintiff alleges against Burkins and Horcher did not occur and

Plaintiff's response to this evidence was not supported in the record. Therefore, the court will grant summary judgment in this matter as to the intentional infliction of emotional distress claim against Defendants Burkins and Horcher.

### D. The Medical Defendants' Motion for Summary Judgment Will Be Denied in Part and Granted in Part.

Next, the court turns to the motion for summary judgment filed by the Medical Defendants, including Young, Macut, Zeiders-Heichel, Thomas, Drabich, and PrimeCare. (Doc. 210.) The remaining claims in this action include a Fourteenth Amendment deliberate indifference claim against Drabich, a *Monell* claim against PrimeCare, and an intentional infliction of emotional distress claim against all remaining Medical Defendants. (Doc. 119.)

#### 1. Deliberate Indifference

The court will use the same standard set forth above to address the deliberate indifference claim Plaintiff has brought under the Fourteenth Amendment. *See supra*. Here, the Medical Defendants have presented primarily the same evidence concerning Drabich and Zimmerman's interactions and the call to EMS on January 10, 2020. This includes the affidavits of Drabich and Barnett, and treatment logs showing that Morz was contacted prior to 9:38 p.m. on January 10, 2020. (Docs. 211-2, p. 2; Doc. 211-4; Doc. 211-5.) They do not produce any evidence of when the EMS was called. In response, Plaintiff cites to his affidavit and his deposition as support for his allegations that Drabich complied with Zimmerman's alleged

26

request to delay calling the ambulance until shift change was over.  (Doc. 254, p. 17; Doc. 250-4, pp. 4–5.)  Because the parties have produced conflicting affidavits, the court finds that there is an issue of material fact as to the events that took place on January 10, 2020 concerning the call or calls made between Drabich and Zimmerman.  Because of this issue of material fact, the Medical Defendants' motion for summary judgment will be denied as to the deliberate indifference claim raised against Defendant Drabich.

### 2.  *Monell* Claim

Plaintiff has sought to establish liability against PrimeCare for the deliberate indifference on the part of Drabich.  (Doc. 67, p. 15.)  The parties have characterized this as a *Monell* claim against PrimeCare in reference to the Supreme Court case *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978) in which the Court held that that, while municipal bodies may not be sued solely for violations perpetrated by its employees or agents, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Id.*, at 964.

It is well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable and cannot be held

responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (citations and quotations omitted). A private corporation contracted by a prison to provide health care for inmates cannot be held liable on a *respondeat superior* theory; rather, it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs. *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003) (citing *Monell*, 436 U.S. at 691).

In their motion for summary judgment, the Medical Defendants state that Plaintiff cannot establish that any policy or procedure led to the alleged constitutional violation on the part of Drabich. (Doc. 212, p. 20.) In response, Plaintiff presents a news article describing a case in which PrimeCare was found liable after spoiling evidence to cover up constitutional violations. (Doc. 254, pp. 31–32.) Plaintiff appears to argue that he has presented evidence in the form of his affidavit that this continued lack of treatment establishes a custom of deliberate indifference within PrimeCare, and he attempts to raise the accusation that PrimeCare has altered his medical records to hide this deliberate indifference. (Doc. 254, p. 33.) Additionally, he argues that Defendants admit they have no policy for medical emergencies, but attach the Dauphin County Prison policy for Emergency Health Services. (Doc. 254, pp. 34–35; Doc. 250-10.)

28

The court finds that Defendants have presented evidence that they responded to Plaintiff's request for medical treatment and provided extensive care in December of 2019 and January of 2020.  (Doc. 211-2.)  Therefore, even if for the sake of argument, this custom of deliberate indifference is established through the news articles relied upon by Plaintiff, the existence of this custom at one time is not evidence that this custom has been followed in this case.  Medical Defendants have submitted evidence that Plaintiff requested treatment on December 3, 2019 for pain in his sides, neck, and shoulders.  (Doc. 211-2, p. 28.)  He was seen by Nurse Wright on December 4, 2019, and was given ibuprofen.  (*Id*., pp. 13–14.)  He was seen by Macut on December 5, 2019 and was assessed as constipated.  (*Id*., p. 23–24.)  He verbally requested to see a doctor on December 10, 2019 stating that his pain continued after his constipation resolved.  (*Id*., p. 3.)  He was seen by William Young, M.D. on December 11, 2019 with a question of gall bladder disease and a consult request was submitted for an ultrasound of his liver/gall bladder.  (*Id*., pp. 3, 23.)  He had blood work performed on December 12, 2019, which was reviewed by William Young, M.D. on December 13, 2019.  (*Id*., pp. 6–7, 17.)  He submitted a request for treatment on December 14, 2019 stating that he was still having pain in his side.  (*Id*., p. 29.)  Plaintiff received an ultrasound of his abdomen on December 16, 2019.  (*Id*., p. 19.)  He verbally requested to see a provider on December 18, 2019.  (*Id*., p. 2.)  He submitted a request for treatment

29

on December 19, 2019 stating that he was having sharp pains in his side, difficulty breathing, and light headedness. (*Id.*, p. 30.) He was seen on December 20, 2019 by William Young, M.D. and was assessed with chest wall pain and hepatosplenomegaly. (*Id.*, pp. 22–23.) He submitted a request for treatment on December 23, 2019 stating he had a muscle cramp in his left leg and requesting some muscle rub. (*Id.*, p. 31.) He received imaging on his chest on the same day that demonstrated that the pulmonary vasculature was unremarkable. (*Id.*, p. 20.) William Young, M.D. reviewed the imaging on December 27, 2019. (*Id.*, p. 18.) He was treated by Zeiders-Heichel on December 27, 2019 and was given ibuprofen. (*Id.*, pp. 15–16.)

As a response, Plaintiff submitted evidence that he was disciplined for the interaction with Thomas and Glenn on December 15, 2019 by submitting the incident report. (Doc. 250-11.) Plaintiff argues that being disciplined for requesting medical treatment demonstrates the custom of refusing treatment set forth in the news articles he attached. (Doc. 254.) However, the court notes that the incident report submitted by Plaintiff demonstrates that he was disciplined for refusing to obey a verbal order and inappropriate behavior towards staff and the discipline did not interfere with his treatment. (Doc. 250-11.) The disciplinary board did not make a decision until January 23, 2020, after he was treated at the hospital. (*Id.*) Therefore, this incident report does not support Plaintiff's assertion

30

that he was punished for seeking treatment as a part of PrimeCare's custom of ignoring requests for treatment.

Additionally, that fact that Plaintiff disagreed with the treatment he received is not a constitutional claim. *See White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) (Mere disagreement over proper treatment does not state a claim upon which relief can be granted).

As for the accusation that PrimeCare has altered records to hide their unconstitutional custom or practice in this case, this is not a claim that Plaintiff raised in the operative complaint in this matter. (Doc. 67.)  Therefore, the court will not allow Plaintiff to amend his pleading to include this claim in his responses to Plaintiff's motion for summary judgment.  As such, the court will grant the Medical Defendants' motion for summary judgment as to the *Monell* claim against PrimeCare.

### 3.  Intentional Infliction of Emotional Distress

As set forth above, a claim for intentional infliction of emotional distress requires that Plaintiff establish that Defendants' conduct was extreme and outrageous. *Bruffett*, 692 F.2d at 914.  Here, the evidence submitted by both parties demonstrates that when Plaintiff requested treatment verbally or in writing, he was given treatment.  While this treatment may have amounted to a

misdiagnosis, it does not rise to the level of extreme or outrageous, and the motion for summary judgment will be granted as to this claim.

The court makes one exception to this finding. There remains an unresolved issue of material fact regarding Drabich and Zimmerman's conversation on January 10, 2020. *See supra*. There is an argument that a jury could find the purposeful delay in contacting EMS extreme and outrageous. Therefore, the claim of intentional infliction of emotional distress will not be dismissed against Defendant Drabich.

## CONCLUSION

First, the court will grant the Dauphin County Defendants' motion to supplement their statement of material facts. For the reasons set forth above, the court will grant the motions for summary judgment in part and deny the motions for summary judgment in part. The court finds that there is an issue of material fact as to the events that took place between the EKG on 9:23 p.m. and the call to EMS at 9:58 p.m. on January 10, 2020. This issue of material fact results in the deliberate indifference claims and the intentional infliction of emotional distress claims against Defendants Zimmerman and Drabich surviving summary judgment. Additionally, the negligence claim against Defendant Zimmerman will survive summary judgment. Defendants' motions for summary judgment will be granted with respect to the deliberate indifference claims against Defendants Burkins

32

Horcher, PrimeCare, and Drabich, the negligence claims against Defendants

Glenn, Burkins, and Horcher, and the intentional infliction of emotional distress

claims against Defendants Glenn, Burkins, Horcher, PrimeCare, Young, Macut,

Zeiders-Heidel, and Thoams.

To resolve the outstanding issue of administrative exhaustion, the court will

hold an exhaustion hearing and set a post-hearing briefing schedule.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: March 30, 2026